UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY O'NEILL, D.O.,

    Plaintiff,

vs.                                                  Case No.

UNUM LIFE INSURANCE COMPANY         HON.
OF AMERICA,

    Defendant.

___

Troy W. Haney (P48614)
Haney Law Office, P.C.
Attorney for Plaintiff
330 East Fulton Street
Grand Rapids, MI 49503
Telephone:   616/235-2300
Facsimile:    616/459-0137
Email:        thaney@troyhaneylaw.com

___

## COMPLAINT

Plaintiff, Timothy O'Neill, D.O., by his attorney, Troy W. Haney of Haney Law Office, P.C., and for his complaint against defendant, states as follows:

### Nature and Action and Jurisdiction

1. This is a civil complaint brought by Plaintiff, Timothy O'Neill, D.O. ("Plaintiff"), under the Employee Retirement Income Security Act ("ERISA"), §502, 29 U.S.C. 1132, regarding breach of the terms of an employee benefit plan and breach of fiduciary duties, for the purpose of compelling defendant to provide certain disability

insurance benefits in amounts and at the coverage levels promised and for an accounting, recovery of damages, costs and attorney fees incurred as a consequence of defendant's breaches of its obligations and duties under ERISA as detailed herein.

2. This Court has subject jurisdiction over Plaintiff's claims pursuant to ERISA §502(e) and (f), 29 U.S.C. 1132(e) and (f) and 28 U.S.C. 1331.

3. Venue properly lies in this District pursuant to ERISA §502(e)(2), 29 U.S.C. 1132(e)(2).

## Parties and General Allegations

4. At all relevant times, Plaintiff, Timothy O'Neill, D.O., was a participant, as defined by ERISA §3(7), 29 U.S.C. 1002(7), in the Lakeshore Anesthesia Services, P.C. Plan ("the Plan") provided by Lakeshore Anesthesia Services, P.C. (Lakeshore Anesthesia) to its eligible employees, including Plaintiff, administered and funded by an insurance policy issued by defendant, Unum Life Insurance company of America (Unum) to Lakeshore Anesthesia group disability benefits, group policy no. 151384, and group life insurance benefits policy, group policy number 9277141.

5. At all relevant times, the Plan was an employee welfare benefit plan within the meaning of ERISA §3(1), 29 U.S.C. 1002(1), sponsored by Lakeshore Anesthesia and funded by the above-referenced insurance policy issued by Unum. As such, Unum is the proper party to defend this matter and the sole entity responsible for the payment of claimed benefits set forth below.

6. At all relevant times, Unum was the fiduciary of the Plan within the meaning of ERISA §3(21), 29 U.S.C. 1002(21), in that Unum acted as a claims administrator and

      as a fiduciary for the Plan and exercised authority and control over the payment of long term disability benefits, which are assets of the Plan. Pursuant to 29 C.F.R. §2560.503-1(h)(1), Unum, therefore, functioned as an administrator for claims procedure purposes.

7. The Unum policy under which benefits are provided to plaintiff is subject to MCR R 500.2201-2202 providing that "a discretionary clause" included in a policy of insurance provided in Michigan is "void and of no affect". MAC R 500.2202. Therefore, the controlling policy in this matter does not provide for discretionary review and the standard of review in this matter is *de novo*.

## Facts

8. On all relevant dates, Plaintiff, Timothy O'Neill, D.O., a Doctor of Osteopathic Medicine, who is Board Certified in Anesthesiology, was employed full-time as a staff anesthesiologist working in the operating room, by Lakeshore Anesthesia Services, P.C., date of hire being July 1, 2009.

9. On April 15, 2013, Dr. O'Neill fell down the stairs at his home, sustaining an acute hematoma. Following this initial injury, Dr. O'Neill has undergone five operations which are described as follows:

| # OF SURGERIES | DATE | PROCEDURE PERFORMED |
|---|---|---|
| First | 04/16/2013 | Left frontotemporal parietal craniotomy with evacuation of acute subdural hematoma.<br>POSTOPERATIVE DIAGNOSIS:<br>Acute left subdural hematoma. |
| Second | 07/15/2013 | Left middle ear exploration with fascia patching of oval window and round window.<br>POSTOPERATIVE DIAGNOSIS:<br>Left mixed hearing loss. |

| Third | 08/19/2013 | Left middle cranial fossa repair of superior semicircular canal dehiscence; microdissection; facial nerve monitoring; cranioplasty less than 5 cm.<br>POSTOPERATIVE DIAGNOSES:<br>Left superior semicircular canal dehiscence syndrome with vertigo, unsteadiness and hearing loss. |
|---|---|---|
| Fourth | 01/22/2014 | Left transmastoid repair of superior semicircular canal dehiscence.<br>POSTOPERATIVE DIAGNOSIS:<br>Left superior semicircular canal dehiscence with vertigo and hearing loss. |
| Fifth | 04/23/2014 | Transmastoid obliteration of superior semicircular canal with fascia and hyrxyapatite; middle ear exploration with occlusion of round window with fascia and cartilage and packing of the oval window. Facial nerve monitoring and microdissection.<br>POSTOPERATIVE DIAGNOSIS:<br>Severe left autophony and conductive hearing loss due to superior semicircular canal dehiscence syndrome. Superior petrosal sinus diverticulum eroding superior semicircular canal. |

10. Subsequent to the above-described surgeries, the plaintiff was diagnosed with superior canal dehiscence, which is a rare medical condition of the inner ear and is a fracture in the temporal lobe. The plaintiff is very sensitive to loud, chaotic noises, and suffers from unpredictable disorientation, dizziness, has hearing loss, autophony and a balance disorder.

11. Following the April 15, 2013, initial surgery, the plaintiff attempted a return to work on May 21, 2013, but due to the above described symptomatology, went back out of work on July 26, 2013, which was his last day worked.

12. Plaintiff, on multiple occasions, has expressed the fact that he does not feel safe in the operating room and that he would be putting patients' lives at risk if he were to resume his prior duties as an anesthesiologist.

13. Through his employment with Lakeshore Anesthesia, the plaintiff applied for long term disability benefits with Unum on September 30, 2013, which benefits were

approved on November 13, 2013.

14. On February 20, 2015, Unum corresponded with the plaintiff that he would reach the "maximum duration for benefits due to any mental illness on September 19, 2015, provided you continue to meet the policy definition of disability." Unum's correspondence goes on to discuss the **plaintiff's request for an independent medical examination**, which was subsequently scheduled on at least three different occasions ultimately leading to a "paper" independent medical examination.

15. Without the benefit of an attorney, the plaintiff forwarded a letter to Unum on February 23, 2015, regarding Unum's inaccurately labeling him with a disabling diagnosis of mental illness, further stating in part as follows:

> –. My review of the SSA determination has revealed my award was also based on the secondary diagnosis of 'severe hearing loss not treated with cochlear implant.'
> * * *
> I am not, nor have I ever claimed to be disabled on the basis of mental illness. * * *
> It is very distressing that your letter goes on to describe in detail the limitations of my policy regarding benefits awarded based on mental illness and that you were not pursing the independent medical evaluation I requested 'in light of new information supporting ongoing benefits due to your mental illness'. This is ostensibly dismissing any further consideration at this time of the physical reason I have given you for my ongoing disability.' –.

16. The plaintiff retained the undersigned services with regard to his ongoing claim for long term disability benefits based on his physical medical conditions. On March 20, 2015, the undersigned corresponded with Unum advising of our retention, requesting a specific time period pursuant to the Department of Labor's regulations as to the appeal time period. On April 6, 2015, Unum advised in correspondence stating in part as follows:

> We do not give appeal rights while we are paying benefits on the claim. While we are paying benefits under the mental illness limitation right now, we are continuing

our evaluation of his claim, including scheduling an Independent Medical Evaluation as requested by the client.

17. An independent medical examination has never taken place. Unum obtained a "paper" independent medical examination by Gerard Gianoli, M.D. of the Ear & Balance Institute who opined that Dr. O'Neill was capable of performing light duty work.

18. When submitting his opinions, Dr. Gianoli did not take into account Dr. Eric Sargent's December 3, 2014, response to Unum's question whether Dr. O'Neill could perform light work exerting up to 20 lbs of force; frequent sitting, reaching, handling, fingering and talking, occasional standing and walking, in which he stated:

> These are not the limitations that prevent Dr. O'Neill from working. His limitations are: 1) Severe unilateral hearing loss. 2) Dizziness triggered by noise or straining. These will likely be permanent.

19. Through his employment with Lakeshore Anesthesia, the plaintiff was required to work 36 hour shifts and, when on call, could average up to 90 hours per week. The job required frequently sitting, standing, walking, bending/stooping, squatting/crouching, reaching, twisting, carrying, pushing/pulling and lifting. The plaintiff was required to carry, push, pull and lift patients who were in excess of 250 pounds.

20. On October 28, 2015, Unum terminated the plaintiff's long term disability benefits stating in part that they had consulted with a vocational rehabilitation consultation who concluded that "*in the national economy the occupation is performed consistent with the restrictions supported by the reviewing*

*physicians also noting that the noise intensity level is 'quiet'."*

21. The plaintiff consulted with vocational rehabilitation consultant, Dr. Robert Ancell, whose vocational rehabilitation report dated February 5, 2016, states in part:

> \* \* \*
>
> From a vocational rehabilitation standpoint, Dr. O'Neill has sustained extremely significant vocationally limiting problems. Dr. Gianoli specifically indicated that under the most ideal of conditions, he would be able to do certain specialties of the fiend of anesthesiology. In the real world of anesthesiology that he practiced in, which was a Level II Trauma Center, he would be totally unable to perform the substantial portions of his job. The peer reviewed studies by Katz, Niosh and others confirm that operating rooms are not quiet facilities at all, but are moderate to very loud on occasion. Further, the fall risk that Dr. O'Neill is confronted with is a danger to himself and to others in an operating room, where major surgeries are being performed. It should also be noted that an anesthesiologist is actively involved in physical demands of the job as it relates to positioning, transferring and dealing with medical emergencies and within the general hospital itself. Therefore, Dr. O'Neill is totally unable to perform as an anesthesiologist based on his physical limitations and the affect of the fatigue and lack of energy reserves that he has to use in order to ry to deal with the ongoing symptoms that he is experiencing. –.

22. The plaintiff had to stop training with Ron Clark, his personal fitness trainer at Esteem Fitness due to his balance and dizziness.

23. On April 21, 2016, the undersigned appealed Unum's October 28, 2015, decision to terminate the plaintiff's long term disability benefits on the basis of a paper independent medical records review providing a multitude of medical records and documentation together with a report prepared by licensed clinical psychologist, Dr. Steven Harris, stating in part:

> Summary Clinical Opinions
> –. He is of the opinion that his disability from work has been erroneously attributed to a mental disorder, with an outright minimization or negation of the actual nature of his disability, which is the numerous sequelae from his closed head injury and resultant semicircular canal dehiscence with the associated sensitivity to loud noises, dizziness, autophony, and imbalance. Based upon a comprehensive review of data as outlined earlier in this report, including a Beck Depression Inventory-II score of 0, and a Beck Anxiety Inventory score of 0, it is this clinician's opinion that Dr. O'Neill does in fact suffer from alcohol dependence and major depression, recurrent; however, it is also my opinion that these disorders are chronic

and are not, nor have they ever been disabling conditions in this gentleman. This patient has a demonstrated history of long term employment as an anesthesiologist with an impeccable work record while managing these disorders. While there appears to have been an exacerbation of his depression as a consequence of his injuries and loss of employment, this is considered to be reactive and best characterized as an exogenous depression. His para-suicidal behaviors admittedly occurred when he was inebriated and his emotional destabilization at these times indeed a function of his acute intoxication within the context of chronic alcohol abuse. A diagnosis of a major affective disorder such as bipolar, cannot be established when mood lability is a function of his intoxication and alcohol dependent lifestyle. Once stabilized, as is the case presently, there is no evidence to establish either a bipolar disorder or major depression. It is also noteworthy that Dr. O'Neill is currently taking no psychotropic medications, and hasn't for a prolonged period of time, thereby deriving significant benefit from his outpatient psychotherapy program in assisting his adjustment to disability and recovery from alcohol.

24. On August 11, 2016, Unum advised that they were upholding their decision to terminate long term disability benefits and waiver of premium for life insurance benefits on the basis of "another independent medical paper review" and that if the plaintiff disagreed with their decision, he had the right "to bring a civil suit under section 502(a) of the Employee Retirement Income Security Act of 1974."

25. Due to his inability to return to full-time work, the plaintiff applied for disability benefits through the Social Security Administration who found he was disabled under their rules on April 15, 2013. The plaintiff's primary diagnosis is currently "Vertigo and other disorders of vestibular system Sequela of Superior Canal Dehiscence" and a secondary diagnosis of "Injuries to nervous system late effects."

## COUNT I
**Claim for Benefits Pursuant to ERISA §502(a)(1)(B),
29 U.S.C. 1132(a)(1)(B) against Defendant**

26. Plaintiff incorporates paragraphs 1 through 25 above as if fully restated herein.

27. ERISA §502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his

8

rights under the terms of a plan and/or to clarify his rights to future benefits under the terms of a plan.

28. The failure to pay full disability benefits as described above are in direct violation of the terms of the Plan.

29. The Plan has failed to pay disability benefits to Plaintiff despite the recommendations of his physicians and disabling medical conditions.

30. The failure and refusal of the Plan to pay the benefits owned Plaintiff under the Plan is a breach of the terms and provisions of the Plan.

31. In addition, the Plan has failed to properly and thoroughly investigate Plaintiff's claim in the manner required by ERISA's fiduciary and claims procedure requirements.

32. The actions of the Plan have caused damage to Plaintiff in the form of the denial of long term disability benefits and waiver of premium for life insurance benefits.

33. In addition, because the Plan denied the payment of Plaintiff's long term disability benefits, Plaintiff became ineligible for other benefits provided through his employment such as pension, medical benefits, and the waiver of group life insurance premiums.

## PRAYER FOR RELIEF

Plaintiff requests that this Honorable Court grant the following relief:

A. A declaratory judgment pursuant to ERISA §502(a)(1)(B), 29 U.S.C. 1132 (a)(1)(B) and 28 U.S.C. 2201, declaring that Plaintiff is entitled to the group employee benefits in the proper amounts as set forth in the Plan in effect at the time benefits became payable and that defendant has violated the Plan and its fiduciary duties by failing to pay these benefits and honor the group waiver of life premium.

B. A full and accurate accounting by defendant of all computations for Plaintiff's employee benefits, in sufficient detail so that Plaintiff may ascertain that his benefits are being paid in the proper amount.

C. An Order compelling defendant to pay Plaintiff forthwith the full amount of employee benefits due him and to continue such payments for the period set forth in the Plan, including interest on all unpaid benefits.

D. An Order awarding reasonable attorney fees and costs pursuant to ERISA §502(g)(1), 29 U.S.C. 1132 (g)(1).

E. Such other relief as may be just and appropriate.

Dated:  August 26, 2016

*/s/ Troy W. Haney*
Troy W. Haney (P48614)
Haney Law Office, P.C.
Attorney for Plaintiff
330 East Fulton Street
Grand Rapids, MI 49503